J-S30045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NOEL GARCIA | : | |
| | : | |
| Appellant | : | No. 3101 EDA 2024 |

Appeal from the PCRA Order Entered November 7, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010672-2007

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NOEL GARCIA | : | |
| | : | |
| Appellant | : | No. 3102 EDA 2024 |

Appeal from the PCRA Order Entered November 7, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010740-2007

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NOEL GARCIA | : | |
| | : | |
| Appellant | : | No. 3103 EDA 2024 |

Appeal from the PCRA Order Entered November 7, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004348-2008

J-S30045-25

BEFORE:   OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED DECEMBER 12, 2025**

Appellant, Noel Garcia, appeals from the order of the Court of Common Pleas of Philadelphia County that dismissed as untimely his second petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541, *et seq.* He claims, *inter alia*, that the PCRA court erred by denying his petition as untimely because he asserted a newly-discovered fact as an exception to the PCRA's time-bar based on his supposed discovery in 2022 that his 2009 agreement to an aggregate imprisonment term in connection with his negotiated guilty pleas in the instant cases would cause deferred service of a probationary sentence in an unrelated case. He also challenges an order of restitution. We find that the PCRA court properly dismissed as unreviewable five of Appellant's six claims but conclude that the claim challenging the restitution order was improperly rejected as time-barred under the PCRA. We remand for further proceedings concerning the restitution claim without prejudice to Appellant's ability to pursue a plea enforcement motion concerning his first issue below.

At his guilty plea hearing, Appellant accepted the following summary of the facts underlying his convictions:

> [O]n September [24], 2006[,] in the morning hours, [Appellant] drove his rental car, a green Dodge Stratus with Virginia tags from [the] Frankford [neighborhood] to the Strawberry Mansion area in the City and County of Philadelphia.

_____

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

In the car with [Appellant] on that morning were Jeremiah Battle and Calvin Caldwell. [Appellant] traveled to the Strawberry Mansion area with the intent of looking for Jacob Moses and other ["]33rd Street["] men to avenge the Friday night shooting of [Appellant's] friend, Anthony Brown.

[Appellant] turned his car onto the 2500 block of Spangler Street in Philadelphia and on that street was Michael Seeney with two other men, Michael Seeney being a ["]33rd Street guy.["]

[Appellant] fired one shot from his .40[-]caliber weapon across the passenger and out the passenger window. A single shot went off and the gun jammed. That shot grazed Michael Seeney's hip. [Appellant] pulled off.

About ten minutes later, [Appellant] was still driving in the area, still with Jeremiah Battle and Calvin Caldwell. Also in the car was Rasheed Brown. [Appellant] pulled onto Huntingdon Street. At the same time, Alisha Corley was driving her cousin's white Oldsmobile.

In her car was her sister, Ashley Corley, her godsister, Tynah Green, her [one]-year-old son, [R.B.], and her [five]-year-old daughter, Cashae Rivers.

Miss Corley was driving to the detail shop on 34th and Huntingdon to have her cousin's car fixed. She had to pull around the block to do so and as she pulled in front of the detail shop on 34th Street, [Appellant] fired nine shots from the same .40[-]caliber weapon into the back of Alisha's car[.]

Four of those bullets entered the car and one of them went through the backseat into the back of [five]-year-old Cashae Rivers. That shooting was witnessed by members of [Appellant's] vehicle, Jeremiah Battle, Rasheed Brown[,] and Calvin Caldwell.

[Appellant] drove off and made his way back to Frankford onto Lescher Street and later that same afternoon[,] after [Appellant] had found out that his 34th and Huntingdon shooting resulted in the death of a little girl, he met with his friend, Ronald Newton.

Ronald Newton and [Appellant] decided to go out and shoot Jason Couch. Mr. Couch was another ["]33rd Street guy["] and also a

witness in an open homicide case where [Appellant's] friend was charged.

[Appellant] had already disposed of the murder weapon, the .40[-]caliber used to shoot both at Spangler Street and 34th and Huntingdon. They needed a new weapon.

Mr. Newton and [Appellant] drove to North Philadelphia onto Myrtlewood Street and picked up a third man, Anthony Brown, the same man who had been shot that Friday night. Mr. Brown provided the weapon, a new .40[-]caliber gun.

The three men drove to Colorado and Cumberland in the City and County of Philadelphia. On Colorado Street, they saw Jason Couch standing with other people. They fired five shots at Jason Couch missing Mr. Couch but hitting a [forty-nine]-year-old woman named Virginia Bing, striking her in the lower right leg and shooting then [fifteen]-year-old [C.I.] [C.I.] was shot in the stomach and received extensive medical work as a result of that. He had a colostomy bag and a lower bowel resection and was in the hospital and rehabilitating for quite a period of time.

The Commonwealth would [] call[, as a witness,] Carl Rone who is a firearms examiner with the City and County of Philadelphia and an expert in the area of ballistics and firearms examination, and he would testify that the nine shell casings that were recovered from 34th and Huntingdon and the one shell casing that was recovered from the 2500 block of Spangler Street were, in fact, fired from the same .40[-]caliber semi-automatic weapon.

The five fired cartridge casings that were recovered from the scene at the Colorado and Cumberland shooting, which occurred […] at 4:10 [p.m.], were also .40 caliber but were from a different weapon than the first two shootings.

[The Commonwealth] would also mark as [Exhibit] C-1, [Appellant's] certificate of non-licensure[,] which sa[id] that he was not eligible to carry a firearm in the City and County of Philadelphia on the date of the shooting[s.]

\*\*\*

Finally, […] the Commonwealth would call the Medical Examiner, Dr. Ian Hood, the Deputy Medical Examiner in the City and County

of Philadelphia at the time of th[e] murder. He is an expert in the area of forensic pathology and he would testify that he performed the autopsy on Cashae Rivers.

Cashae [Rivers] at the time of [her] death was [five] years old, [an] African-American female, [three] feet, [nine] inches tall, and [forty-seven] pounds. [Dr. Hood] would testify that the evidence of injury to [Cashae Rivers] was a single distance range gunshot wound to the back, no soot or gunpowder[,] and the projectile was recovered from the body. The cause of death [was] a single gunshot wound to the back and [Dr. Hood] would testify that the manner of death was homicide and both of those opinions would be rendered to a reasonable degree of medical certainty.

N.T. Trial/Guilty Plea Hearing, 6/10/09, 48-55.

On June 8-9, 2009, the parties began selecting a jury for a capital trial. *See* N.T. 6/8/09, 15 (trial judge noting, in introductory *voir dire* remarks to the jury, that "this case may involve the death penalty"). On the third day of *voir dire*, June 10, 2009, Appellant elected to forgo the jury selection process and entered negotiated guilty pleas in each of the underlying criminal matters. *See* N.T. Trial/Guilty Plea Hearing, 6/10/09, 32-60. He pleaded guilty to: (1) murder of the third degree, aggravated assault, carrying a firearm without a license, and possessing an instrument of crime at CP-51-CR-0010672-2007;[1] (2) four counts of recklessly endangering another person at CP-51-CR-0010740-2007;[2] and (3) two counts of aggravated assault and a single count

_____

[1] 18 Pa.C.S. §§ 2502(c), 2702(a), 6106(a)(1), and 907(a), respectively. These charges encompassed the shootings resulting in the murder of Cashae Rivers and the aggravated assault on Michael Seeney. *See* N.T. Trial/Guilty Plea Hearing, 6/10/09, 47.

[2] 18 Pa.C.S. § 2705. The charges in this case arose from the same incidents with respect to the charges at CP-51-CR-0010672-2007, and these charges
*(Footnote Continued Next Page)*

- 5 -

each of attempted murder, conspiracy to commit murder, carrying a firearm without a license, and possessing an instrument of crime at CP-51-CR-0004348-2008.[3] *See id.* at 41-43, 55-60.

In exchange for the guilty pleas, the Commonwealth agreed to recommend an aggregate sentencing scheme of twenty-two to forty-five years' imprisonment, to be served concurrently with a sentence that Appellant was already serving in an unrelated case, and *nolle prosse* all remaining charges in the three instant cases.[4] *See* Written Guilty Plea Colloquy (CP-51-CR-0010672-2007), 6/10/09 1; Written Guilty Plea Colloquy (CP-51-CR-0010740-2007), 6/10/09, 1; Written Guilty Plea Colloquy (CP-51-CR-0004348-2008), 6/10/09, 1; *see also* N.T. Trial/Guilty Plea Hearing, 6/10/09, 36, 43-44, 71. On the same date, the plea court imposed the agreed-upon sentence and entered an order for restitution in the amount of $6,900. *See*

_____

involved the other persons in the car with Cashae Rivers. *See* N.T. Trial, 6/8/09, 7 (Prosecutor: "Those [charges] are just the other people that were in the car and for some reason when they did the preliminary [hearing], they got separated."); N.T. Trial/Guilty Plea Hearing, 6/10/09, 47.

[3] 18 Pa.C.S. §§ 2702(a), 901(a)/2502, 903(a)(1)/2502, 6106(a)(1), and 907(a), respectively. The charges in this case concerned the shooting where the target was Jason Couch, and Virginia Bing and C.I. were injured. *See* N.T. Trial, 6/8/09, 8; N.T. Trial/Guilty Plea Hearing, 6/10/09, 48.

[4] In the unrelated case at CP-51-0008407-2007, Appellant pleaded guilty to one count of carrying a firearm without a license, in violation of 18 Pa.C.S. § 6106(a)(1), and was sentenced in that case, on June 18, 2008, to one-and-one-half to three years' imprisonment, to be followed by four years' probation. *See Commonwealth v. Garcia*, 2024 WL 5166094, *1 (Pa. Super., filed Dec. 19, 2024) (unpublished memorandum) (1169 EDA 2024).

Order (sentencing at CP-51-CR-0010672-2007), 6/10/09, 1; Order (sentencing at CP-51-CR-0010740-2007), 6/10/09, 1; Order (sentencing at CP-51-CR-0004348-2008), 6/10/09, 1; N.T. Trial/Guilty Plea Hearing, 6/10/09, 73-76. Appellant did not file post-sentence motions or an appeal.

On June 7, 2010, Appellant filed, *pro se*, an initial PCRA petition in each of the underlying criminal matters. Following the appointment of counsel, Appellant filed a counseled amended PCRA petition in which he challenged the legality of his sentence, asserting that that he had not been granted a credit for time served, and alleged that his plea counsel provided ineffective assistance by not requesting a time-credit or challenging the legality of his sentence due to the failure to award a time-credit. **See** Amended First PCRA Petition, 7/12/11, ¶¶ 6-7; Memorandum of Law, 8/11/11, 1-2. After the Commonwealth filed an answer to the petition, the PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907. **See** Rule 907 Notice, 2/15/12, 1. After Appellant did not file a response to the dismissal notice, the PCRA court entered docket entries reflecting the dismissal of the petition on March 19, 2012, and issued dismissal orders on March 21, 2012. **See** Trial Court Docket Entries, 3/19/12; Order (first PCRA petition dismissal), 3/21/12, 1. On June 24, 2013, we affirmed the dismissal. **See Commonwealth v. Garcia**, 82 A.3d 468 (Pa. Super. 2013) (table) (1186 EDA 2012). On December 9, 2013, our Supreme Court denied a subsequent petition for allowance of appeal. **See Commonwealth v. Garcia**, 81 A.3d 75 (Pa. 2013) (table) (389 EAL 2013).

On March 4, 2021, Appellant filed, *pro se*, a second PCRA petition, which was docketed in all three of the underlying criminal matters and is the focus of the instant appeals. Therein, he claimed that he was entitled to relief pursuant to an opinion he identified, without citation to a journal number, as "**Brooks v. Gilmore**," and alleged that his placement in solitary confinement and his transfer to another state correctional facility constituted government interference with his presentation of a claim for relief.[5] **See** *Pro Se* Second PCRA Petition, 3/4/21, §§ 5(i), 5(iii), 6(C). The PCRA court appointed counsel. **See** Short Certificate Order (counsel appointment), 5/7/21, 1. On June 21, 2021, Appellant filed *pro se* correspondence, requesting to withdraw the pending PCRA petition. **See** *Pro Se* Correspondence, 6/2/21 1. Prior to any response to the *pro se* request to withdraw the petition, appointed counsel filed a "no merit" letter pursuant to **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). In the **Finley** letter, counsel acknowledged Appellant's *pro se* petition withdrawal request and that the petition was untimely filed, and noted, in any event, that, based on counsel's independent review of the record, counsel would be "unable to file an amended petition on [Appellant's] behalf." **Finley** Letter, 2/25/22, 1-4.

---

[5] The case referred to by Appellant appears to be an unpublished memorandum of the United States District Court for the Eastern District of Pennsylvania in **Brooks v. Gilmore**, 2017 WL 3575475 (E.D.Pa., filed Aug. 11, 2017) (unpublished memorandum), in which the federal district court ruled that a jury instruction on the issue of reasonable doubt constituted structural error.

On August 25, 2022, Appellant filed *pro se* correspondence requesting the PCRA court to issue writs because the plea court supposedly erred when it ordered him to pay restitution. **See** *Pro Se* Correspondence, 8/25/22, 1. He alleged that his sentence was illegal because the restitution was directed, at least, in part, to a "victims compensation fund," and the Commonwealth could not be considered a victim for restitution purposes under 18 Pa.C.S. § 1106. **See** *Pro Se* Correspondence, 8/25/22, 1.

On September 12, 2022, Appellant filed *pro se* correspondence to the PCRA court which he asserted was a motion for *nunc pro tunc* leave to amend his PCRA petition pursuant to Pennsylvania Rule of Criminal Procedure 905 in order to raise a claim that the plea court's imposition of imprisonment sentences for attempted murder and conspiracy, arising from the same episode, violated 18 Pa.C.S. § 906. **See** *Pro Se* Correspondence, 9/12/22, 1.

On December 7, 2022, Appellant filed *pro se* correspondence to the PCRA court in which he sought additional leave to amend his PCRA petition. **See** *Pro Se* Correspondence, 12/7/22, 1. In this request, he asserted that he wanted to raise a claim alleging that he was deprived of a full transcription of the trial proceedings prior to the entry of his guilty pleas, referring to a "lack of critical transcribed sidebar[ conferences]," which deprived him of an ability to determine the voluntariness of his guilty pleas. **Id.** at 2-3.

On December 19, 2022, Appellant filed, *pro se*, correspondence to the PCRA court, stating an intent to proceed *pro se* and seeking leave to file an amended PCRA petition, a motion to proceed *pro se*, and a copy of a proposed

amended PCRA petition. *See Pro Se* Correspondence, 12/19/22, 1; *Pro Se* Motion to Proceed *Pro Se*, 12/19/22, 1; *Pro Se* Proposed Amended PCRA Petition, 12/19/22, 1-10. In the proposed *pro se* amended PCRA petition, Appellant alleged that he was serving an illegal sentence because he received imprisonment terms for multiple inchoate offenses. *See Pro Se* Proposed Amended PCRA Petition, 12/19/22, § 5(iii). As for applicable exceptions to the PCRA's time-bar provision, he asserted, relevant to this appeal, that it was a previously unknown fact to him that part of his sentence in his unrelated matter at CP-51-CR-0008407-2007 would be served consecutive to his sentencing scheme in the instant criminal cases, even though the sentence at CP-51-CR-0008407-2007 should have been "run totally concurrent" with the sentences in the instant cases. *Id.* at §§ 5(ii), 6(A). He alleged that he learned of his asserted "previously unknown fact" in a Commonwealth response, dated January 11, 2022, to his PCRA petition in the separate matter at CP-51-CR-0008407-2007. *Id.* at § 6(B).

In a letter brief that was attached to his proposed *pro se* amended PCRA petition, Appellant asserted that: (1) he had been previously unaware that the trial court had engaged in the plea bargaining process in his cases and that activity supposedly invalidated his guilty pleas; (2) plea counsel was ineffective for inducing his guilty pleas where he was allegedly innocent; (3) his sentences exceeded the lawful maximums allowed; (4) the plea court applied the wrong prior record score for his sentencing; (5) he was previously unaware, prior to a January 18, 2022 Commonwealth filing in his unrelated

criminal matter, that service of his four-year probationary sentence in that case would be deferred until after his service of his imprisonment in the instant criminal matters, and that was supposedly an improper modification of his sentence that rendered his guilty pleas involuntary; (6) the plea court imposed illegal sentences by sentencing him to imprisonment terms on multiple inchoate offenses in violation of 18 Pa.C.S. § 906; (7) his order to pay restitution rendered his sentence illegal because it directed payment to the Commonwealth as a victim; and (8) an absence of transcripts for off-the-record sidebar conferences impaired his ability to pursue appellate review and mandated a remand to develop a full record. *See* *Pro Se* Letter Brief, 12/19/22, 1-11. He claimed that his discovery of the deferred service of his probationary term at CP-51-CR-0008407-2007 constituted a newly-discovered fact for purposes of seeking an exception to the PCRA's jurisdictional time-bar. *Id.* at 4; *see* 42 Pa.C.S. § 9545(b)(1)(ii).

On January 3, 2023, Appellant filed *pro se* correspondence to the PCRA court requesting leave of court to amend his PCRA petition to assert that his illegal sentence claim based on sentences for multiple inchoate offenses qualified for review under a newly-recognized constitutional right exception to the PCRA's time-bar. *See* *Pro Se* Correspondence, 1/3/23, 1-2; *see* 42 Pa.C.S. § 9545(b)(1)(iii).

On January 12, 2023, Appellant filed *pro se* correspondence to the PCRA court requesting leave of court to amend his PCRA petition to make additional arguments for applying exceptions to the PCRA's time-bar with respect to his

claim that he was illegally sentenced on multiple inchoate offenses. *See Pro Se* Correspondence, 1/12/23, 1; *Pro Se* Motion for Allowance for Leave to Amend, 1/12/23, 1-4.

On February 14, 2023, Appellant filed *pro se* correspondence to the PCRA court requesting leave to amend his PCRA petition to assert that the newly-discovered fact exception to the PCRA's time-bar applied to his claim that the plea court improperly applied an incorrect prior record score at his sentencing; Appellant did not identify the fact that would have been the basis for applying that exception. *See Pro Se* Correspondence, 2/14/23, 1-2.

On March 10, 2023, the PCRA court granted Appellant's counsel's motion to withdraw from representation of Appellant and permitted Appellant to proceed *pro se*. *See* Order (PCRA counsel withdrawal), 3/10/23, 1.

On March 13, 2023, Appellant filed *pro se* correspondence to the PCRA court that he characterized as a letter brief for a motion for discovery pursuant to Pennsylvania Rule of Criminal Procedure 902(E), requesting a search warrant, an affidavit of probable cause, and the notes of testimony for his preliminary hearing. *See Pro Se* Correspondence, 3/13/23, 1-2.

On March 21, 2023, Appellant filed *pro se* correspondence to the PCRA court that he characterized as a "motion for [a] stay" of his PCRA proceedings, in which he restated his claims from his prior correspondence to the court, alleging the incorrect calculation of his prior record score, the improper imposition of imprisonment terms for multiple inchoate offenses, and the improper imposition of restitution, and requested an "early determination on

- 12 -

the merits" of those claims from the PCRA court. *Pro Se* Correspondence, 3/21/23, 1-5.

On April 27, 2023, the PCRA court filed correspondence to Appellant denying his request for an "early decision" on his claims. PCRA Court Correspondence, 4/27/23, 1. On May 3, 2023, the PCRA court filed correspondence to Appellant and an order, granting him leave to file an amended PCRA petition. *See* PCRA Court Correspondence, 5/3/23, 1; Order (leave to amend), 5/3/23, 1.

On May 5, 2023, Appellant filed a *pro se* letter brief that he asked to be accepted as an amended PCRA petition. *See* Amended PCRA Petition, 5/5/23, 1. Therein, he addressed his discovery that his pleas in the instant cases caused deferred service of his probation term in his unrelated criminal matter, which he characterized as a newly-discovered fact for time-bar purposes. *See id.* at 3-4. He also argued that his claim regarding sentencing for multiple inchoate offenses was reviewable pursuant to a newly-recognized constitutional right exception to the time-bar based on our Supreme Court's decision in *Commonwealth v. King*, 234 A.3d 549 (Pa. 2020).[6] *See* Amended PCRA Petition, 5/5/23, 5. He also restated his claims alleging the sentencing court's consideration of an incorrect prior record score, the

_____

[6] *King* was a direct appeal in which our Supreme Court concluded, *inter alia*, that a trial court was precluded from imposing consecutive imprisonment for inchoate crimes of attempted murder and conspiracy that arose from the same incident. *See King*, 234 A.3d at 570-72.

imposition of his restitution, his pleas being unlawfully induced, the trial court improperly engaging in the plea negotiation process, and the absence of notes of testimony for off-the-record side bar conferences at his trial that occurred prior to the entry of his guilty pleas. *See id.* at 5-13.

On July 24, 2023, Appellant filed a *pro se* motion seeking a modification of his restitution order. *See Pro Se* Motion for Modification of Sentence, 7/24, 23, 1-2. On July 28, 2023, the Commonwealth filed a response to Appellant's amended PCRA petition, requesting the dismissal of the petition as untimely because it did not establish an exception to the PCRA's time-bar. *See* Commonwealth Response, 7/28/23, 1-18. On August 21, 2023, Appellant filed a *pro se* response to the Commonwealth's filing, again addressing his argument for applying the newly-discovered fact time-bar exception to his claim concerning deferred service of his probation in his unrelated criminal matter as a result of his negotiated pleas in the instant criminal matters. *See Pro Se* Response to Commonwealth, 8/24/23, 1-2. On August 29, 2023, Appellant filed *pro se* correspondence to the PCRA court in which he requested leave to amend his PCRA petition to assert that the trial court lost subject matter jurisdiction over the case by permitting the Commonwealth to amend his charges at his trial. *See Pro Se* Correspondence, 8/29/23, 1-3.

On October 30, 2023, Appellant filed *pro se* correspondence to the PCRA court requesting leave of court to raise a "contemporaneous objection,"

alleging that the Commonwealth committed a **Brady**[7] violation, and asserting that he had been deprived of information concerning misconduct in an unrelated criminal matter by homicide detectives who supposedly had some alleged involvement in his own case. ***See*** *Pro Se* Correspondence, 10/30/23, 1-5. Appellant also addressed this **Brady** claim in additional correspondence to the PCRA court that he filed on December 12, 2023. ***See*** *Pro Se* Correspondence, 12/12/23, 1-2. On February 23, 2024, the Commonwealth filed a response addressing the **Brady** claim, advising the PCRA court to reject the additional claim as untimely and meritless. ***See*** Commonwealth Response, 2/23/24, 1-11.

On June 10, 2024, the PCRA court denied Appellant leave to amend his petition. ***See*** Order (denial of amendment leave), 6/10/24, 1. On July 22, 2024, Appellant filed correspondence to the PCRA court requesting leave to amend his petition to include additional arguments for applying the newly-discovered fact time-bar exception to his various claims. ***See*** *Pro Se* Correspondence, 7/22/24, 1-4.

On July 23, 2024, the PCRA court issued a Rule 907 dismissal notice. ***See*** Rule 907 Notice, 7/23/24, 1. On August 5, 2024, Appellant filed *pro se* correspondence to the PCRA court requesting reinstatement of his direct appeal rights *nunc pro tunc* based on a "breakdown in the administration process" caused by the Commonwealth being granted an amendment of his

_____

[7] **Brady v. Maryland**, 373 U.S. 83 (1963).

charges on the first day of his trial. *Pro Se* Correspondence, 8/5/24, 1-4. On October 15, 2024, Appellant filed a *pro se* application for modification of his restitution order. *See Pro Se* Application for Modification, 10/15, 2024, 1-8.

On November 7, 2024, the PCRA court issued orders dismissing Appellant's petition and denying his motion for modification of his restitution order. *See* Order (denial of second PCRA petition), 10/7/24, 1; Order (denial of restitution modification motion), 10/7/24, 1. Appellant timely filed notices of appeal. *See* Notices of Appeal, 11/12/24. He also filed a timely court-ordered concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).[8] *See* Order (Rule 1925), 12/10/24, 1; *Pro Se* Rule 1925(b) Statement, 12/16/24, 1-2.

Appellant presents the following questions for our review:

1.) Did the PCRA [c]ourt's reasoning for deeming Appellant's PCRA [p]etition untimely and not conducting a review of the merits of the claims underlying the PCRA [p]etition's "newly[-]discovered fact invoked and pled by the [Appellant] pursuant to 42 Pa.C.S. §[ ]9545(b)(1)(ii)" fail where the [c]ourt found the newly[-]discovered fact was easily discernable long before the 2023 filing of the instant PCRA because Appellant's claim is actually supported by the facts in the [c]ertified [r]ecord?

---

[8] On November 25, 2024, we denied an application for relief filed by Appellant in which he requested leave of court to amend his notices of appeal. *See* Superior Court Order (denial of application for relief), 1/6/25, 1. On February 13, 2025, we granted Appellant's application for consolidated of his three appeals addressed herein. *See* Superior Court Order (consolidation), 2/13/25, 1-2; *see also* Pa.R.A.P. 513.

> 2.) Does the newly-discovered facts being asserted for the purposes of the time-bar exception pursuant to 42 Pa.C.S. §[ ]9545(b)(1)(ii) serve as a "conduit" for the [c]ourt to then review additional claims for relief asserted by Appellant underlying the PCRA [petition?]

Appellant's Brief, 2.

In his first issue, Appellant contends that the PCRA court erred by dismissing his petition as untimely where he had alleged the newly-discovered fact exception to the PCRA's time-bar. *See* Appellant's Brief, 6-7. Appellant alleges that the new fact was that his probation term at CP-51-CR-00008407-2007 would not be served concurrently with the prison sentences in the instant matters, and that he first learned of the new fact in a "letter brief" from the Philadelphia District Attorney's Office that was filed in his unrelated criminal matter at CP-51-CR-0008407-2007 on January 11, 2022. *Id.* at 7. He asserts that the delayed service of that probation term "was not part of [his] plea agreement in the instant case(s)." *Id.* He maintains that his petition was timely filed for purposes of the newly-discovered fact exception because he filed it before his receipt of the "letter brief" in the unrelated criminal matter and then amended his petition within one year of his receipt of the "letter brief" to raise the claim about the "deferred" probationary term.[9] *Id.*

_____

[9] Appellant refers to an amended PCRA petition filed on December 19, 2022, however, he filed a request for leave to file an amended petition at that time in a *pro se* capacity while he still had appointed counsel who was awaiting a response from the PCRA court on a petition withdraw from representation pursuant to *Finley*. *See Pro Se* Correspondence, 12/19/22, 1; *Pro Se* Motion to Proceed *Pro Se*, 12/19/22, 1; *Pro Se* Proposed Amended PCRA Petition, 12/19/22, 1-10. Appellant nevertheless raised his claim concerning the
*(Footnote Continued Next Page)*

The PCRA court concluded that Appellant's petition was untimely filed and Appellant failed to demonstrate the applicability of the statutory time-bar exception because he did not prove, for this claim or his remaining claims, that he acted with the requisite diligence for seeking a time-bar exception: "None of the claims Appellant claims are 'new' as the issues raised were easily discernable long before the 2023 filing of the instant PCRA [petition]. This PCRA [petition] is untimely, and none of the limited time-bar exceptions apply." PCRA Court Opinion, 1/27/25, 5.

"We review the denial of a PCRA petition to determine whether the record supports the PCRA court's findings and whether its order is free of legal error." *Commonwealth v. Kelsey*, 206 A.3d 1135, 1139 (Pa. Super. 2019). Before we can review the issues raised on appeal, we must determine whether Appellant's petition satisfies our jurisdictional requirements. *See Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) ("we must first consider the timeliness of Appellant's PCRA petition because it implicates the jurisdiction of this Court and the PCRA court"). "Our law is clear that the PCRA's time restrictions are jurisdictional in nature, and '[i]f a PCRA petition is untimely, neither this Court nor the trial court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims.'" *Commonwealth v. Anderson*, 234 A.3d

_____

deferred service of his probation term in his unrelated criminal matter, with leave of court, in an amended PCRA petition filed on May 5, 2023. *See* Amended PCRA Petition, 5/5/23, 3-4; Order (leave to amend), 5/3/23, 1.

735, 737 (Pa. Super. 2020) (brackets in original), *quoting Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010) (citation omitted).

All PCRA petitions, "including a second or subsequent petition, shall be filed within one year of the date the judgment [of sentence] becomes final" unless an exception to timeliness applies. 42 Pa.C.S. § 9545(b)(1). Here, the plea court sentenced Appellant on June 10, 2009, and he did not subsequently file post-sentence motions or an appeal. His judgments of sentence thus became final on July 10, 2009, when his deadline for filing a direct appeal expired. *See* 42 Pa.C.S. § 9545(b)(3) (judgment of sentence becomes final at the conclusion of direct review or the expiration of time for seeking further review). Appellant thus had until July 12, 2010, to file a timely PCRA petition.[10] *See* 42 Pa.C.S. § 9545(b)(1). He did not file his instant PCRA petition until March 4, 2021. Therefore, Appellant's PCRA petition is patently untimely.

To obtain review of his untimely PCRA petition, Appellant was required to plead and prove the applicability of one of three statutory exceptions that are found at 42 Pa.C.S. § 9545(b)(1)(i)-(iii). Moreover, pursuant to 42 Pa.C.S. § 9545(b)(2), he needed to plead and prove that he filed his petition

_____

[10] Because the one-year deadline for timely filing a PCRA petition fell on Saturday, July 10, 2010, Appellant would have had until Monday, July 12, 2010, to file the petition. *See* 1 Pa.C.S. § 1908 (excluding, *inter alia*, weekends from time computations).

within one year of the date any claims for application of the statutory time-bar exceptions "could have been presented." *Id.*

With respect to his first issue, Appellant claims that he discovered from a 2022 Commonwealth filing in his unrelated case that his 2009 plea agreement for concurrent terms in the instant cases caused the Department of Corrections to defer his probationary term in the unrelated case to be served following his service of imprisonment in the instant cases. *See* Appellant's Brief, 7. He asserts this qualified for the application of the time-bar exception at 42 Pa.C.S. § 9545(b)(ii), which applies when a PCRA petitioner proves that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." *Id.* Assuming *arguendo* that Appellant's knowledge of the exact aggregation of his multiple terms of imprisonment in the instant cases and the probation term in the unrelated case could be considered a newly-discovered fact for time-bar exception purposes, we agree with the PCRA court's conclusion that it was required to deny the instant PCRA claim because Appellant did not raise his time-bar exception claim with the diligence required by 42 Pa.C.S. § 9545(b)(2).

Here, we appreciate that the instant claim is based upon Appellant's view that the Department of Corrections should have designated his probation term in the unrelated case to be served concurrently with the imprisonment terms imposed in the cases before us. That view is contrary to a number of opinions by this Court reasoning that probation cannot be served concurrently

with imprisonment.[11]  *See, e.g., Commonwealth v. Brown*, 145 A.3d 184, 188 (Pa. Super. 2016) (holding that defendant Brown's probationary sentence did not commence until his release from federal custody and noting that because "probation rehabilitates a defendant in a less restrictive manner than total confinement" then "logic would lead to the conclusion that a term of probation cannot be served while the defendant is imprisoned on an unrelated sentence, whether it be in a state facility as in *Allshouse* or in federal custody as with Brown"); *Commonwealth v. Allshouse*, 33 A.3d 31, 36 (Pa. Super. 2011) ("we find no support in the Pennsylvania statutes that the General Assembly intended to permit defendants to serve a term of probation and a term of state incarceration simultaneously") (footnote omitted), *overruled on other grounds by Commonwealth v. Simmons*, 262 A.3d 512 (Pa. Super. Super. 2021) (*en banc*); *Commonwealth v. Basinger*, 982 A.2d 121, 127 (Pa. Super. 2009) ("No section of the Sentencing Code contemplated imprisonment as an element of a probationary sentence; probation is in fact a less restrictive alternative to imprisonment directed at rehabilitating the defendant without recourse to confinement during the probationary period") (citations omitted).

_____

[11] The issue of the propriety of probationary sentences running concurrently with imprisonment sentences is currently before this Court *en banc*.  *See Commonwealth v. Jennings*, No. 1128 EDA 2024; *Commonwealth v. Robinson*, No. 907 EDA 2024.  Oral argument on that issue in *Jennings* and *Robinson* was heard by an *en banc* panel on October 30, 2025.

The passages cited above in **Basinger**, **Allshouse**, and **Brown** would have provided Appellant notice years prior to the filing of his 2021 second PCRA petition that his probation term at CP-51-0008407-2007 could not be served concurrently with his imprisonment terms in the three underlying criminal matters. At a minimum, with the exercise of diligence in the presentation of the instant claim, Appellant would have had reason, based on that case law, to confirm with the Department of Corrections the exact aggregation scheme that the department would have arrived at following his 2009 guilty plea agreement, if he were initially under the wrong impression that probation could be served concurrently with imprisonment. Having waited until his *pro se* filing in 2022, to raise a related claim about the sentence aggregation scheme, based on supposed notice from a filing by the Commonwealth in his unrelated case, Appellant could hardly demonstrate that he acted with the requisite diligence mandated by 42 Pa.C.S. § 9545(b)(2). Because Appellant could have learned of the overall sentencing scheme resulting from his 2009 guilty plea agreement years prior to the filing of the instant PCRA petition, with the exercise of due diligence, we agree with the PCRA court that – to the extent Appellant sought relief for this claim under the PCRA – it was unreviewable as time-barred. **See Commonwealth v. Brown**, 111 A.3d 171, 176 (Pa. Super. 2015) (PCRA timeliness exception at 42 Pa.C.S. § 9545(b)(ii) requires a petitioner to "demonstrate [that] he did not know the facts upon which he based his petition **and** could not have learned those facts earlier by the exercise of due diligence") (emphasis added).

- 22 -

In the course of arguing the first issue, Appellant alludes to a separate related claim seeking relief – not under the PCRA – but under the contractual theory of specific performance: "Appellant is entitled to relief because Appellant entered into an agreement that neither the trial court nor the Commonwealth could keep when it accepted Appellant's negotiated plea[.]" *See* Appellant's Brief at 9-10, *citing Commonwealth v. Zuber*, 353 A.2d 441 (Pa. 1976). We cannot address that claim in the first instance because, based on the PCRA court's opinion, it is not readily apparent that a specific performance claim was presented to and ruled on by the PCRA court. In any event, our review of the dismissal of the PCRA petition at issue does not bar Appellant from proceeding with the presentation of a specific performance claim in a plea enforcement motion to the plea court following our instant review.[12] *See Commonwealth v. Kerns*, 220 A.3d 607, 611-12 (Pa. Super. 2019) ("a collateral petition to enforce a plea agreement is regularly treated as outside the ambit of the PCRA and under the contractual theory of specific performance").

In the remainder of his brief, Appellant assumes his establishment of an applicable PCRA time-bar exception for his first issue establishes jurisdiction

_____

[12] We would be acting beyond our role as an error-correcting court if we were to address Appellant's specific performance claim in the first instance. Moreover, we are ill suited to address a claim of that nature where review would require a mixture of factual and legal findings. Accordingly, we decline to directly address the issue, which in any event Appellant may pursue, without prejudice, in a subsequent plea enforcement motion.

for his remaining substantive claims. *See* Appellant's Brief, 11 ("Appellant contends that this newly[-]discovered fact bears a logical connection to his other plausible claims for relief since the newly[-]discerned fact presents a substantial question to the legality of [Appellant]'s sentence which is an area of the plea of guilt entered by [Appellant]."); *see also id.* at 18 ("This [newly-discovered fact] should have allowed [the] PCRA [c]ourt to reach the merits of the remaining claims underlying the [p]etition."). He then proceeds to argue that: (1) he received an illegal sentence due to the imposition of imprisonment terms for multiple inchoate offenses, *see id.* at 11-12; (2) the plea court did not have jurisdiction to accept his 2009 guilty pleas because it supposedly permitted an untimely amendment of his conspiracy charge at CP-51-CR-0004348-2008, *see id.* at 12-14; (3) the plea court improperly engaged in the plea negotiation process in these cases, *see id.* at 14-17; (4) the plea court applied an incorrect prior record score at his sentencing hearing, *see id.* at 18-20; (5) the plea court improperly ordered him to pay restitution to the Commonwealth, *see id.* at 20-21; and (6) the PCRA court should have conducted an inquiry into a *Brady* claim Appellant raised with respect to a discovery motion granted by the PCRA court, *see id.* at 22-23.

Of these additional claims, the averments that the plea court erred by improperly engaging in the plea bargaining process and miscalculating his prior record score were waived for PCRA purposes because they were trial court error claims that could have been preserved before the plea court and presented on direct review. *See Commonwealth v. Spotz*, 18 A.3d 244,

270 (Pa. 2011) ("Appellant's claim of trial court error … is both waived and not cognizable under the PCRA because it could have been raised on direct appeal."); *Commonwealth v. Fowler*, 930 A.2d 586, 593 (Pa. Super. 2007) ("Challenges to the discretionary aspects of sentencing are not cognizable under the PCRA."); 42 Pa.C.S. § 9543(a)(3) (a PCRA petition bears the burden of pleading and proving by a preponderance of the evidence that his claim has not been waived); 42 Pa.C.S. § 9544(b) (a claim is waived for purposes of the PCRA if the petitioner could have previously raised it on appeal); *see also* *Commonwealth v. Myers*, 324 A.3d 528, 543 (Pa. Super. 2024) (*en banc*) (claim that a court miscalculated a prior record score implicates the discretionary aspects of a sentence).

The claims that the plea court imposed an illegal sentence by levying imprisonment terms for multiple inchoate offenses and the plea court lacked jurisdiction to accept Appellant's guilty pleas, and Appellant's post-conviction *Brady* claim were all cognizable under the PCRA and therefore subject to its jurisdictional time-bar. *See Commonwealth v. Larkin*, 235 A.3d 350, 355 (Pa. Super. 2020) (*en banc*) (holding that a challenge to a court's jurisdiction to accept a guilty plea is cognizable under the PCRA and that a defendant cannot "escape the PCRA time-bar" by raising such a claim in a *habeas corpus* petition); *Commonwealth v. Simpson*, 66 A.3d 253, 264 n.16 (Pa. 2013) ("A *Brady* claim is cognizable on collateral appeal under the PCRA"); *Fowler*, 930 A.2d at 592 ("[A]lthough legality of sentence is always subject to review within the PCRA, claims must still first satisfy the PCRA's time limits or one of

the exceptions thereto.") (citation omitted). As addressed above, Appellant does not specifically argue for the application of any time-bar exception for these substantive claims beyond asserting that the application of the newly-discovered facts exception to his first issue should create jurisdiction for all of his PCRA claims. *See* Appellant's Brief, 11, 18.

Here, we did find above that Appellant satisfied his burden of pleading and proving an applicable time-bar exception for his first issue concerning the aggregation of his imprisonment terms with his probation term in an unrelated criminal matter. Assuming *arguendo* that Appellant prevailed on proving an applicable time-bar exception for his first issue, we would still reject his argument that hypothetical jurisdiction created for his first issue would extend to his other cognizable claims. This is because the PCRA time-bar exceptions are claim-specific and the finding of an applicable time-bar exception for one claim does not equally apply to other unrelated claims. *See Commonwealth v. Porter*, 35 A.3d 4, 13-14 (Pa. 2012) (Section 9545(b) "speaks in singular terms of 'the claim' or 'the right' which is the subject of a serial PCRA 'petition'" and, as such, the time-bar exceptions "are claim specific"); *see, e.g., Commonwealth v. Woods*, 179 A.3d 37, 44 (Pa. Super. 2017) ("if the right announced in *Miller* [*v. Alabama*, 567 U.S. 460 (2012),] applies to any of [a]ppellant's claims, the petition is timely as to that specific claim"). In the absence of Appellant pleading and proving an applicable time-bar exception for the illegal sentence, plea-court jurisdiction, and *Brady* claims, they are unreviewable for our purposes. *See Commonwealth v. Brown*, 943 A.2d

264, 267 (Pa. 2008) (there is "no generalized equitable exception to the jurisdiction one-year time bar pertaining to post-conviction petitions"). Accordingly, we affirm the PCRA court's dismissal of these discrete claims.

In Appellant's remaining claim, he challenges part of the restitution ordered by the plea court, alleging, based on our Supreme Court's decision in ***Commonwealth v. Veon***, 150 A.3d 435 (Pa. 2016), that the plea court erred by ordering him to pay partial restitution to the Commonwealth to reimburse it for money paid from a crime victims' compensation fund. ***See*** Appellant's Brief, 20-21. In a recent decision from this Court in ***Commonwealth v. Thomas***, 340 A.3d 1053 (Pa. Super. 2025), we considered a claim addressing a motion to set aside restitution on the basis that the restitution was ordered without consideration as to the appellant's ability to pay, which a plea court had rejected as an untimely PCRA petition. ***See id.*** at 1056. We appreciated in that case that 18 Pa.C.S. § 1106(c)(3) creates an independent cause of action for a defendant seeking a modification or amendment of a restitution order which "are not subject to typical post-sentence timeliness constraints." ***Thomas***, 340 A.3d at 1058; 18 Pa.C.S. § 1106(c)(3) ("The court may, **at any time** … **alter or amend** any order of restitution.") (emphasis added). Thus, we agreed with defendant Thomas that his plea court erred by treating his motion challenging a restitution order as an untimely PCRA petition. ***See Thomas***, 340 A.3d at 1058 (appellant Thomas "sought relief outside the ambit of the PCRA, and his motion was not subject to its time constraints").

We agree that **Thomas** controls Appellant's restitution claim under 18 Pa.C.S. 1106, and therefore the PCRA court improperly dismissed Appellant's restitution challenge as part of an untimely PCRA petition even though there was no applicable statutory time-bar exception. **See** PCRA Court Opinion, 1/27/25, 5 ("Appellant's myriad[] assertions includ[ing] … restitution/sentencing issues … do not [in]voke an exception to the PCRA time bar."). Based on this erroneous application of the PCRA's time-bar to the restitution claim, we must remand for further proceedings.

Accordingly, we vacate the PCRA court's dismissal order with respect to Appellant's claim challenging his restitution order, affirm the order as to his remaining claims, and remand for further proceedings with respect to the restitution challenge. We note that, on remand, Appellant is free to pursue, outside the time constraints of the PCRA, a plea enforcement motion raising a contractual specific performance claim alluded to in his first issue addressed above.

Order affirmed in part and vacated in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judge Murray joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/12/2025</u>